Appellate, Mr. King for the Appellant, Ms. Cole for the Appellant. Good morning, Your Honors. Good morning. Kevin King for Appellant Antoine Miller. I'd like to reserve two minutes for rebuttal. Your Honors, I'll start with the Fourth Amendment issue. We submit that the officers unconstitutionally and unlawfully seized Mr. Miller on the sidewalk through a show of authority, and as a result, Mr. Miller's conviction must be vacated and the evidence against him must be suppressed. Specifically, the officers seized Mr. Miller on the sidewalk through the show of authority when they did four things together in the totality of the circumstances. First, the officers pursued Mr. Miller on foot after he attempted to walk away after the first two questions. He was asked, do you have a firearm? He responded, no. He was asked again. He responded, no. And yet after those two questions, he attempted to walk away and the officers pursued him on foot. Second, the officers asked him a total of four times, four times, whether he had a firearm. Third, the officers directed the fourth of those questions to a specific crime, possessing a firearm unlawfully, and to a specific part of his body, to his front waistband. And immediately after doing that, the officers directed him, told him is the word that they used, to, quote, turn around. Fourth and finally, they did all of these things at a point in time when Mr. Miller's path to walk away was effectively blocked. To the east, there was a stone wall and a tall iron fence, much higher than Mr. Miller's head. To the west, there was a row of parked cars and trees, a two-way street, and an approaching police car, which was turning around. To the south was Detective Delpo, just maybe 20 feet away. And to the north, immediately behind Mr. Miller or to his side, was Officer Hiller. So he had nowhere to go. Well, he could have just walked down the sidewalk, couldn't he? If you look at that picture you've got in your brief, the sidewalk was pretty wide. Couldn't he have just walked away? I'm not so sure, Your Honor. The sidewalk is, I think, I've been there. It's a pretty standard D.C. sidewalk. To do so, he would have had to push past Detective Delpo if he wanted to continue south with Mr. Morton. If he wanted to go north and turn around, he would have had to push past Officer Hiller. Certainly, I don't think he could have gone left or right. No, but he could have gone just the sidewalk. There was room for a couple of people. There was a grass strip. The cars weren't parked nose-to-nose. There was space. Couldn't he have just walked away? I would concede, Your Honor, that it's possible, physically possible, that he could have tried to push past Detective Delpo and go to the south. But I guess what I'd say is no one of these factors on its own caused the seizure. It's the totality of the circumstances. Okay, let me ask you to clarify something. You said he started to walk away. He did walk away. The police received him? The police, he was walking south, and this is at A52 in the appendix. After the second question, the officer testified that Mr. Miller continued walking south and Mr. Morton, who had walked ahead maybe 20 or 30 feet. The officers were in the car at this point. This is after the second question. So he's walking along the sidewalk, and they're just going parallel in the street. What's happening is the officers and Mr. Miller are going in opposite directions at the time when the officers are in the vehicle. And so Miller's going this way, and the officers are coming this way, and they're both stopped. That doesn't sound like a pursuit. Well, it's not a running pursuit, but I guess what I'm meaning to say. They were going in opposite directions. They were following him. Well, they were going in opposite directions before the third question, and then Mr. Miller, the testimony is, stopped and turned around and faced the officer. In other words, Mr. Miller was leaving the scene until the officers came out of the car and asked him the third question. No, I'm sorry. That's the officer's testimony. That's Officer Hiller's testimony at page 52 of the appendix. And so to recap it, Miller is leaving until the officers get out of the car. The officers getting out of the car and asking him that third question, do you have a firearm, is what caused him to stop and turn around. And that's the officer's testimony. It could be courtesy, but an element of our defense here is submission to a show of authority. That stopping and turning around and then later grabbing that wrought iron fence and assuming the position, that shows that Mr. Miller submitted to the officer's show of authority. I don't want to rely too much. The officers did not testify to that. That's Mr. Miller's testimony. We're not relying on that. You said that, I think you said that the officer told Miller to turn around. But this report's finding is that the officer posed these questions to Miller in a conversational tone. Absolutely, Your Honor. We're not challenging the tone, but the word is told. And this is at page A63. Officer Hiller testifies, quote, I, quote, told Mr. Miller to, quote, turn around. And so you can characterize told however you want, but I think that that's right in the neighborhood of an instruction or a command. Now, it may have been commanded in a conversational, calm way. We're not challenging that. But I think, nevertheless, a reasonable person in this situation is not going to feel free to leave. That's really the focus of the analysis under the Fourth Amendment. You've got to ask yourself, would a reasonable person, after being asked four times about a specific crime in the fourth time directed to a specific part of your body, your front waistband, and the officers have come out of their car, walking after you, after you've tried to walk away, would a reasonable person feel free to leave at that instant? I think the answer clearly is no. What do you think your best case is? The best case for us is the Jackson case from the D.C. Court of Appeals. Well, that's a problem, right? Because I don't think the D.C. Circuit's adopted that standard, have we? Well, in this court's recent Castle ruling from 2016, and Judge Edwards wrote that decision, this court referred to the D.C. Court of Appeals decision in J.F. as instructive, helpful, albeit not binding. And I would say the same thing. It's persuasive authority. It's not binding. But let me tell you what happened to Jackson. The facts are almost identical to the facts that we have here. What happened there is that there was a call from a woman who said she was afraid about a person who was standing on the stoop of her apartment building. And the officers responded. They didn't have any reason. There was no suspicion of crime. They just showed up and they interviewed this guy. And what they did, the D.C. Court of Appeals said, is they repeatedly questioned him without any reasonable suspicion. And in addition to that, they told him, just as the officers told Mr. Miller here, to, quote, turn around. Those facts together, that repeat questioning, showing to a reasonable person that you're not going to be free to leave until the officers are satisfied and that they get the answer they want, together with that instruction, equaled a seizure. And the same thing is true here. But if you want to go beyond Jackson, there are two other cases I'd call your attention to, Your Honor. The first is, again, another from the D.C. Court of Appeals called Gordon, which relied on repeat questioning, quote, accusatory in nature, to find a seizure. And then this Court's Castle decision, which I referred to just a moment ago, in which the officers effectively blocked the path of the defendant by intercepting him in a dark, narrow alleyway. So those are our best cases on the Fourth Amendment. I guess the other thing I'd want to highlight here, I know my time is limited, is that the officers testified repeatedly that they had no suspicion of criminal activity whatsoever at any point in this encounter up until the moment when Mr. Miller said, yes, I have a gun. And that sets this case apart from the mine run of other cases where officers almost always have some kind of suspicion, some basis for doing what they're doing. Here, they testified at least twice that there was no reasonable suspicion whatsoever. So a ruling for Mr. Miller here is not going to create some great wave. This is a pretty special case in that regard. Was that true in Gross as well? In Gross, I don't believe so. You know, there are some differences between this case and Gross. I guess I'm not sure about what the officers said about suspicion, and I don't want to misrepresent the case. But what I can tell you about Gross is that there was no ñ all the interaction in that case was between the officers when they were in their vehicle and the defendant when he was on foot. The officers did eventually get out of their vehicle and interact with the defendant, but the defendant did not argue a seizure at that point. And so the court had no occasion to reach the type of issue that's presented in this case. Thank you. If I could, I'd turn then to the sentencing issue with my limited remaining time here. This issue obviously matters only if Mr. Miller's conviction is upheld. We hope that it won't be. We believe that it shouldn't be. But if you do reach this issue, we think that there's a clear error by the district court in denying Mr. Miller a two-level reduction for acceptance of responsibility under Section 3E1.1 of the sentencing guidelines. The government, to its credit, much to its credit, has conceded that the district court made an error in denying Mr. Miller that acceptance of responsibility reduction based on his failure to exercise an option that does not exist. And the Supreme Court held just this most recent term that that option does not exist. Judge Jackson said that Mr. Miller should have just pled guilty straight up, and his failure to do so in his decision to go to trial, quote, made it therefore unclear to the court that he actually was accepting responsibility. That's page 388. That was the sole basis for the district court's denial of the acceptance of responsibility reduction, and as a result, a remand is required under 18 U.S.C. 3742, a statute, by the way, I'll note, that the government does not address in its brief. I see that my red light is on. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Chris Ellen Kolb. I represent the United States in this matter. With me at council table are Emory Kohl and Elizabeth Trostman. Your Honor, first, with respect to the motion to suppress, this court should affirm the district court's decision. The district court issued a careful, well-reasoned opinion based on the precedent of this court and the Supreme Court. I'd like to first, before I go through the contours of my argument, address a few of the discrete points that defense counsel made today that they seem to rely on heavily and I don't think are supported by the record with all due respect. The first is with respect to what occurred when the defendant walked up, excuse me, when the officer walked up to Mr. Miller and sought to further engage him in conversation. Counsel used the word pursued. It wasn't a pursuit. The testimony was he walked up, and that's what the district court found. And that testimony is at A53, A91, and the district court found it at A196. Now, as I think the court recognized below and I think this court has recognized, police officers are allowed to do this type of investigative work and to have these types of conversations with people on the street. That's what was happening here. Now, the second point that defense counsel ---- That's not the question we have to answer is whether, under all the circumstances, a reasonable person would have felt free to leave. Agreed. That's the question. Yes, sir. I agree, Judge Tatel. And let me just address another point, though, I think in reference to Your Honor's question. Defense counsel today stated that the officer told the defendant in this case to turn around. We disagree with that. That is not so in the record. And I would ask the court to ---- That wasn't his testimony? No, it is not. And I would respectfully request the court to look at A62 in the record. Question. Tell us what happened next. Answer. Then I asked Mr. Miller to turn around. You know, I can't hear you. I actually said something to the effect, we're both men, we can talk face-to-face. Defense counsel refers to the next page of the testimony at A63 in his argument. And he says, this is the full quote from this witness, from Officer Hiller. No, I said, I'm like, you know, you don't have to face away from me. We're both adults. I'm just talking to you. There's no reason for you to be against the fence facing away from me. At this point, I'm just having a conversation with him, so I don't know why he put himself in that position. That's why I told him, I can't understand you. Turn around, we can continue talking like this. So the totality of the record, which is what the district court found, and this is clear in the district court's decision. What about the other circumstances of this? When you look at that picture, that photograph in the brief, you know which one I'm talking about? Yes, Your Honor. No, it isn't clear how, sure, he could have walked away, maybe, but the district court says, this is the district court's finding. Officer Wright turned his car around in order to secure the perimeter. And then the officer who drove the car says, he says, once the two gentlemen would not go back the other way, I turned my vehicle around in case they decided to run south. So you've got both the district court and the driver saying that the officers were blocking his. Well, that's not, with all due respect, Judge Cato, that testimony is true. The officer did turn his car around. I don't dispute that. But it's not, and the fact that the district judge found, he never blocked his egress in any way. Now, the fact that the officer might have thought, in case things go bad, I want to take this position, I don't think that makes a seizure. And, in fact, the district court very clearly found that the defendant was never surrounded by the police. She discredited the defendant's testimony on that point. And there's multiple points in the testimony where the officers testified that there was no one else in the immediate vicinity of Mr. Miller and Officer Hiller in this case. I'd also point out, Judge Cato, that if you look at the picture, with all due respect, I think counsel and I probably respectfully disagree. I don't think that sidewalk looks very narrow at all. We've had cases in alleys, very different, like in Castle. We've had cases in buses, in trains. I mean, look at Drayton in the Supreme Court. That's a bus. In the small aisle of the bus, where there was an officer walking up and down the aisle, an officer standing in the back of the bus, and an officer who was sitting in one of the seats in the front, and the Supreme Court found that that was not a seizure. So if it's not a seizure in Drayton. Well, Drayton's a very different case, isn't it? In Drayton, the police officers were – in Drayton, the officer – I'm looking at what the court said. It says Officer Hoover, he's that guy. He knelt on the seat and faced the rear of the bus so that he could observe the passengers and ensure the safety of the other two officers without blocking the passageway. For sure. That's absolutely true. Yeah. In other words, the police officers in that case were being very careful not to block. And also, it was a bus full of people. They weren't focused on one person as they were here. Well, Your Honor – It's a very different case, isn't it? This is a public street, and it's only 9.30 at night. No, no, no. I get that. I get that. But it's just – all their focus is this incessant questioning of one person, whereas in Drayton, it was a bus full of people, and the police officers were – located themselves in the bus for purposes of safety and not to block. Sort of the opposite of this. Well, Your Honor, I don't – I don't think Drayton helps you. You've got a lot of cases that help you. I don't think Drayton really helps you. Well, Your Honor, I was pointing to Drayton in terms of the issue of spatial proximity, and I think Drayton is very good for us on that point. But I think you have cases like Goddard and Gross in this court where the court has said – Isn't Gross the case where they never left the car? That's – well, they started to leave the car, and then the defendant fled in Gross. Yeah, well, my point is they never left the car. It's not like this case. It's a little different than this case. I agree, Your Honor. But the other case that we also relied on below and that we rely on in our brief is a First Circuit case called Ford, which is very similar, we think, factually. And in that case, the court found no seizure. Your Honor, the defense counsel relied heavily in the argument today on Jackson, which is a D.C. Court of Appeals case, of course not binding. Nonetheless, the facts in Jackson are very different, we submit, than this case on one very important point. Because in Jackson, if you look at the citation 805A2nd at 988, the court found that the officer in that case told the defendant, please turn around for me, without any basis to do that. And that's different than this case because they were engaged in a conversation. And I read to the court earlier the pages from A62 and A63. That's a very different scenario than this case, I submit to Your Honors. The final thing I guess I would mention is that defense counsel has argued that there were two questions put to the defendant at the very outset of this encounter. And I don't think that's really true. The second question, as the trial court found, was directed towards Mr. Morton, but somehow Mr. Miller decided to answer that again in a frantic way. And that's, I think, a little bit different than the characterization that I think the defense is taking in this case. And the final point I guess I would make is I do think that this was not a seizure for all the reasons that district court articulated, but even in the worst-case scenario, we think that this entire encounter would qualify under Terry and that there was a reasonable articulal suspicion to ask these further questions. But I don't think the court needs to reach that. If I could just address that. And you base that on what, on the nervous demeanor? The three findings of the district court at A201. District court found, one, defendant was frantic and nervous throughout the entire encounter. Two, defendant intentionally shielded the front of his waistband from the officers. Three, Officer Hiller testified that that type of behavior was indicative of possession of a weapon. Those three factors we submit, plus the high crime nature of the area, which the judge doesn't rely on, but this court could under Wardlow. How can the last one give articulable suspicion with respect to an individual? Well, because I think, well, standing alone it wouldn't. That sounds a lot better. I agree. I think both parties here agree you look at the totality of the circumstances. And I think that's just one dot on the map. I'm not relying heavily on that. I'm relying on the other factors that Judge Jackson found, I think, very specifically in her order. Judge, if I could quickly, I see my time is running up, just address the sentencing issue. If the case is going back on the ineffective assistance, why shouldn't the district judge be the first one to address this? There's certainly no reason, and we're not pounding the podium on that. I agree with Your Honor. You mean like you were on the seizure issue? Exactly. Not like I was on the Fourth Amendment issue. I agree. I agree, Judge Ginsburg. It is going to go back on the ineffective assistance. Okay. And there is some ambiguity, but the only point I think the government wanted to make in this appeal is that Judge Jackson made a very clear statement at A391 in the transcript where she said, even if it's true that you wanted to go to trial just to preserve your right to appeal, you didn't make that clear in real time to the  I think that is tantamount to saying, this is last-minute remorse, and under 3E1.1, that's a valid basis. She made that statement in a context where she was mistaken about it. For sure. And that's what I said. This is a situation where a remand is probably, you know, certainly the government wouldn't object, and we noted that in our brief, that if there is some ambiguity, that that's what this Court should do. Okay. And if the Court has no further questions, we would respectfully ask the Court to affirm. Okay. Thank you. Thank you, Your Honor. Did Mr. King have any time left? You can take a minute, Mr. King. Thank you, Your Honor. I'll be brief in light of the government's recent statement. I'll limit myself to three points, all relating to the Fourth Amendment question. First off, counsel said, just as the United States said in its brief, that the driver of the police vehicle did not block a defendant's path. That's an inaccurate statement. The district court did make that finding, but it made the finding at the point in time when all three officers were in the vehicle. And you'll find that we discussed that at page nine of our reply brief. It does not apply to the time when the two officers were on foot. Second, as to the second question and to whom it was directed, Miller had no way of knowing when it's just him and Morton and they're the only guys on the street, that this question somehow was directed to his buddy, Morton, as opposed to him. He hears the police ask a second question, he's going to answer. That's an understandable thing. Third, and finally, the United States just made a brief argument that the officers somehow had reasonable suspicion to do what they did and ask the follow-up questions they did. That's contrary to the officers' own testimony at A61 and A881, that they didn't have any suspicion, none whatsoever, up until the point that Mr. Miller acknowledged having a firearm. So for all these reasons, we'd urge that Mr. Miller's conviction be vacated and the evidence suppressed. Thank you. Mr. King, you were appointed by the court to represent Mr. Miller and we are grateful to you for your assistance. Thank you. Thank you, Your Honor.
judges: Tatel, Edwards, Ginsburg